O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BRENDA GAIL COLE,                  )   Case No. ED CV 12-800-SP
                                   )
              Plaintiff,           )
                                   )
      v.                           )   MEMORANDUM OPINION AND
                                   )   ORDER
CAROLYN W. COLVIN,                 )
Acting Commissioner of Social Security )
Administration,                    )
                                   )
              Defendant.           )
_____  )

**I.**

**INTRODUCTION**

On May 31, 2012, plaintiff Brenda Gail Cole filed a complaint against

defendant, the Commissioner of the Social Security Administration

("Commissioner"), seeking a review of a denial of supplemental security income

("SSI").  On June 29, 2012, plaintiff filed an amended complaint.  Both plaintiff

and defendant have consented to proceed for all purposes before the assigned

Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The court deems the matter

suitable for adjudication without oral argument.

1

1    Plaintiff presents two issues for decision: (1) whether the Administrative

2    Law Judge ("ALJ") properly discounted plaintiff's subjective complaints; and

3    (2) whether the ALJ properly discounted the testimony of a third-party witness

4    regarding plaintiff's limitations.  Memorandum in Support of Plaintiff's Complaint

5    ("Pl.'s Mem.") at 4-12; Memorandum in Support of Defendant's Answer ("Def.'s

6    Mem.") at 2-6.

7    Having carefully studied, inter alia, the parties's moving papers, the

8    Administrative Record ("AR"), and the decision of the ALJ, the court concludes

9    that, as detailed herein, the ALJ properly discounted plaintiff's and the lay

10    witness's credibility.  Consequently, this court affirms the decision of the

11    Commissioner denying benefits.

12                                              **II.**

13                   **FACTUAL AND PROCEDURAL BACKGROUND**

14    Plaintiff, who was forty-nine years old on the date of her July 19, 2010

15    administrative hearing, has a ninth grade education.  AR at 29, 127, 132.  She has

16    no past relevant work experience.  *Id.* at 29.

17    On December 22, 2008, plaintiff filed an application for SSI, alleging that

18    she has been disabled since March 1, 2003, due to diabetes and back problems.  *Id.*

19    at 127.  The Commissioner denied plaintiff's application initially and upon

20    reconsideration, after which plaintiff filed a request for a hearing.  *Id*. at 24, 55-61,

21    71.

22    On July 19, 2010, plaintiff, represented by counsel, appeared and testified at

23    a hearing before the ALJ.  *Id*. at 35-51.  Corinne Porter, a vocational expert

24    ("VE"), also testified at the hearing.  *Id.* at 51-54.  On September 2, 2010, the ALJ

25    denied plaintiff's claim for benefits.  *Id.* at 24-31.

26    Applying the well-known five-step sequential evaluation process, the ALJ

27

28

1  found, at step one, that plaintiff had not engaged in substantial gainful activity
2  since December 22, 2008, the application date. *Id*. at 26.

3      At step two, the ALJ found that plaintiff suffered from the following severe
4  impairments: insulin-dependent diabetes mellitus with diabetic neuropathy, treated
5  hypertension, and bipolar disorder. *Id.*

6      At step three, the ALJ found that plaintiff's impairments, whether
7  individually or in combination, did not meet or medically equal one of the listed
8  impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the
9  "Listings"). *Id.* at 26-28.

10     The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and
11 determined that she had the RFC to perform medium work, with the limitations
12 that plaintiff can "stand or walk six hours in an eight-hour workday with
13 customary breaks, sit without restriction except for customary breaks, [and]
14 occasionally walk on uneven terrain, climb ladders, or work at heights . . . ." *Id.* at
15 28. The ALJ found "no restriction on bending, crouching, kneeling, crawling, and
16 stooping," and further found plaintiff can perform "simple, non-detailed tasks in a
17 non-public work setting." *Id.*

18     The ALJ found, at step four, that plaintiff has no past relevant work. *Id.* at
19 29.

20     At step five, the ALJ found, after considering plaintiff's age, education,
21 work experience, and RFC, that there were jobs that existed in significant numbers
22 in the national economy that plaintiff could perform, including hand packager,

23

24     [1]    Residual functional capacity is what a claimant can do despite existing
25 exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152,
26 1155-56 nn.5-7 (9th Cir. 1989). "Between steps three and four of the five-step
27 evaluation, the ALJ must proceed to an intermediate step in which the ALJ
   assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486
28 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1  cleaner, and laundry worker.  *Id.* at 30.  Consequently, the ALJ concluded that
2  plaintiff did not suffer from a disability as defined by the Social Security Act
3  ("SSA").  *Id.*

4      Plaintiff filed a timely request for review of the ALJ's decision, which was
5  denied by the Appeals Council.  *Id.* at 6-11.  The ALJ's decision stands as the final
6  decision of the Commissioner.

## III.

## STANDARD OF REVIEW

9      This court is empowered to review decisions by the Commissioner to deny
10  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security
11  Administration must be upheld if they are free of legal error and supported by
12  substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)
13  (as amended).  But if the court determines that the ALJ's findings are based on
14  legal error or are not supported by substantial evidence in the record, the court
15  may reject the findings and set aside the decision to deny benefits.  *Aukland v.*
16  *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d
17  1144, 1147 (9th Cir. 2001).

18      "Substantial evidence is more than a mere scintilla, but less than a
19  preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such
20  "relevant evidence which a reasonable person might accept as adequate to support
21  a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276
22  F.3d at 459.  To determine whether substantial evidence supports the ALJ's
23  finding, the reviewing court must review the administrative record as a whole,
24  "weighing both the evidence that supports and the evidence that detracts from the
25  ALJ's conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be
26  affirmed simply by isolating a specific quantum of supporting evidence.'"
27  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

28

1  Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

2  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

3  of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

4  1992)).

5                                                    **IV.**

6                                            **DISCUSSION**

7  **A.     The ALJ Gave Clear and Convincing Reasons for Discounting**

8          **Plaintiff's Testimony**

9          Plaintiff complains that the ALJ failed to provide clear and convincing

10  reasons to reject her testimony regarding her excess pain.  Pl.'s Mem. at 4-9.  The

11  court disagrees.

12          The ALJ must make specific credibility findings, supported by the record.

13  Social Security Ruling ("SSR") 96-7p.[2]  To determine whether testimony

14  concerning symptoms is credible, the ALJ engages in a two-step analysis.

15  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, the ALJ

16  must determine whether a claimant produced objective medical evidence of an

17  underlying impairment, "'which could reasonably be expected to produce the pain

18  or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d

19  341, 344 (9th Cir. 1991) (en banc)).  Second, if there is no evidence of

20  malingering, an "ALJ can reject the claimant's testimony about the severity of her

21  symptoms only by offering specific, clear and convincing reasons for doing so."

22  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Benton v. Barnhart*, 331

23  _____

24          [2]    "The Commissioner issues Social Security Rulings to clarify the Act's
      implementing regulations and the agency's policies.  SSRs are binding on all
25  components of the SSA.  SSRs do not have the force of law.  However, because
      they represent the Commissioner's interpretation of the agency's regulations, we
26  give them some deference.  We will not defer to SSRs if they are inconsistent with
      the statute or regulations."  *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th
27  Cir. 2001) (internal citations omitted).

28

                                                    5

1   F.3d 1030, 1040 (9th Cir. 2003).  The ALJ may consider several factors in

2   weighing a claimant's credibility, including: (1) ordinary techniques of credibility

3   evaluation such as a claimant's reputation for lying; (2) the failure to seek

4   treatment or follow a prescribed course of treatment; and (3) a claimant's daily

5   activities.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*,

6   947 F.2d at 346-47.

7        Here, at the first step, the ALJ found that plaintiff's medically determinable

8   impairments could reasonably be expected to cause the symptoms alleged.  AR at

9   27.  At the second step, because the ALJ did not find any evidence of malingering,

10  the ALJ was required to provide clear and convincing reasons for discounting

11  plaintiff's credibility.  The ALJ provided two reasons for discounting plaintiff's

12  credibility:  (1) plaintiff lacks objective medical evidence to substantiate her

13  claims and the available objective medical evidence contradicts her claims; and

14  (2) plaintiff's treatment history does not support her claims.  *Id*. at 27-29.

15  **1.   The ALJ Gave a Clear and Convincing Reason When He**

16  **Discounted Plaintiff's Credibility Based on Lack of Objective**

17  **Evidence Supporting Plaintiff's Claims**

18       The first ground provided by the ALJ for discounting plaintiff's credibility

19  was the lack of objective medical evidence to substantiate plaintiff's claims.  AR

20  27-27.  An ALJ "may not reject a claimant's subjective complaints based solely on

21  a lack of objective medical evidence to fully corroborate the alleged severity of

22  pain," but it may be one factor used to evaluate credibility.  *Bunnell*, 947 F.2d at

23  345; *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

24       Here, plaintiff claims the record contains objective evidence that supports

25  her claims of debilitating back pain, leg and foot problems caused by diabetes, and

26  depression and anxiety.  Pl.'s Mem. at 4-9.  She points to places in the record that

27  indicate the loss of sensation to plaintiff's legs and feet (AR at 193, 298, 335-36),

28

6

diabetic muscular infarction with neuropathy and lower back pain (*id.* at 193),
scoliosis in the lumbar region (*id.* at 339, 409), prescriptions for medications for
back pain (*id.* at 197, 296), fatigue with low hematocrit rates (*id.* at 194-97, 212,
227, 300, 311, 322, 346, 376, 403, 420), slowed mentation and depression (*id.* at
196-97), suicidal ideation (*id.* at 217-18, 222), bipolar disorder with psychosis (*id.*
at 244), and global assessment function ("GAF") scores of 45, 50, and 48 in July
2008, January 2009, and January 2011, respectively (*id.* at 244, 429). *See* Pl.'s
Mem. at 6-9. Thus, plaintiff asserts the ALJ improperly evaluated the plaintiff's
pain testimony and the record as a whole in discounting her credibility. *See id.*

In his opinion, the ALJ noted the impairments identified by plaintiff in her
briefing and acknowledged that plaintiff has the severe impairments of insulin
dependent diabetes with diabetic neuropathy, hypertension, and bipolar disorder,
but determined, relying on the conclusions of examining physicians, that the
record does not support the claimed "intensity, persistence and limiting effects" of
the symptoms of these impairments. AR at 26-29. The ALJ found that despite
plaintiff's ongoing diabetic condition, "there was no indication of problems with
her diabetes other than persistent elevation of blood sugar levels" and a slightly
elevated glycolated hemoglobin level. *Id.* at 26; *see id.* at 310-336, 344.
Similarly, while the ALJ did find evidence of impairments in the lumbar region,
the ALJ found "no physical examination findings" in plaintiff's most recent
treating record from May 2010 to support her claims. *Id.* at 26; *see id.* at 339.
And although the ALJ noted use of plaintiff's pain medication, the ALJ found no
"weakness, imbalance, or disturbance of gait." *Id.* at 29. As for plaintiff's mental
condition, the ALJ found that despite the GAF of 42 in January 2007, plaintiff's
"formal mental status examination was essentially negative." *Id.* at 27; *see id.* at
255-58. The ALJ noted also that "[t]here is no treating source statement
suggesting that [plaintiff] is unable to work because of her mental impairment or

7

1  was unable to work for any significant period of time . . . because of her mental

2  impairment." *Id.* at 27.

3        In addition, the ALJ found affirmative medical evidence discounting

4  plaintiff's claims in the findings of Kristof Siciarz, M.D., a consultative examining

5  physician, who conducted an internal medicine examination on plaintiff and made

6  a functional assessment in March 2009, and in the findings of D.R. Conte, M.D., a

7  state agency psychiatric consultant, who conducted psychiatric reviews of

8  plaintiff.  *Id.* at 27, 29.  Dr. Siciarz found that plaintiff's back did not have any

9  abnormalities, palpations did not elicit pain complaints, and a straight-leg raising

10 test returned negative results.  *Id.* at 298.  In addition, Dr. Siciarz observed "no

11 evidence of deformity or swelling of any joint" and normal ranges of motion for

12 plaintiff's arms and legs.  *Id.*  As for plaintiff's mental health condition, Dr. Conte

13 concluded that plaintiff's "alleged severity [was] not fully supported" and that the

14 diagnosis of bipolar disorder was "not fully credible in view of [plaintiff's] long

15 term drug use."  *Id.* at 288.  The ALJ relied on these findings by Dr. Siciarcz and

16 Dr. Conte, as well as lack of findings that support plaintiff's claims, in discrediting

17 plaintiff's complaints of pain, anxiety, and depression.  *Id.* at 27, 29.

18        The court finds the ALJ, after acknowledging the medical evidence for the

19 existence of plaintiff's impairments, properly concluded that plaintiff's claims

20 regarding "the intensity, persistence and limiting effects" of her impairments lack

21 support from objective medical evidence.  This was a clear and convincing reason

22 for discounting plaintiff's credibility.  *See* AR at 23, 24-28; *see also Andrews v.*

23 *Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995) (a consultative examiner's opinions,

24 if supported by clinical tests and observations upon examination, are substantial

25 medical evidence and may be relied upon by the ALJ in order to determine the

26 claimant's RFC).

27

28

1  **2.    The ALJ Gave a Clear and Convincing Reason When He**
2  **Discounted Plaintiff's Credibility Based on Failure to Seek**
3  **Regular Treatment**

4         The ALJ's second ground for the adverse credibility finding – failure to
5  seek regular treatment – was similarly clear and convincing.  *See* AR at 27, 29;
6  *Tommasetti*, 533 F.3d at 1039 (failure to follow a prescribed course of treatment
7  weighs against a claimant's credibility); *Burch v. Barnhart*, 400 F.3d 676,
8  680-81 (9th Cir. 2005) (the ALJ may properly rely on failure to seek treatment to
9  discredit plaintiff's subjective complaints); *Orn v. Astrue*, 495 F.3d 625, 638 (9th
10  Cir. 2007) (noting that a failure to seek treatment may be the basis for an adverse
11  credibility finding unless there is a showing of a good reason for the failure);
12  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative
13  treatment' is sufficient to discount a claimant's testimony regarding severity of an
14  impairment.").

15         In his opinion, the ALJ noted several gaps in plaintiff's treatment as an
16  indication that her symptoms were not disabling.  AR at 27, 29.  Plaintiff testified
17  at the July 19, 2010 administrative hearing that she had no feeling whatsoever in
18  her feet, but admitted that she went nearly a year without treatment or medical
19  examination.  *Id.* at 46-47; *see id.* at 29.  Similarly, as the ALJ noted, plaintiff
20  alleged psychological problems of anger, aggravation, and frustration, but
21  admitted that her most recent mental health treatment was in October 2009, nine
22  months before the administrative hearing.  *Id.* at 27, 42, 49.  The ALJ further noted
23  that plaintiff had no mental health treatment records since June 2009.  *Id.* at 27;
24  *see id.* at 360.

25         In her briefing, plaintiff attributes the inconsistency in seeking treatment
26  and the attendant sparseness of treatment records to "her inability to afford care."
27  Pl.'s Mem. at 7.  She asserts not having insurance coverage led her to "only seek

28

1   care when her condition was 'critical' rather than ongoing chronic pain and

2   neuropathy for which there was no treatment other than medication renewals." *Id.*

3   She argues this inability to pay should not discount her complaints. *Id.* (quoting

4   *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("[A] disabled claimant

5   cannot be denied benefits for failing to obtain medical treatment that would

6   ameliorate his condition if he cannot afford that treatment.")).

7   　　　While plaintiff is correct to assert that her indigency or uninsured status

8   cannot be a reason to discredit her credibility, plaintiff does not point to any place

9   in the record where indigency is documented or argued as the reason for her

10  failure to seek treatment. *See* Pl.'s Mem. at 7-9.  In fact, nowhere in the record

11  does plaintiff indicate that the reason for the long gaps in treatment was inability

12  to pay and lack of insurance.  *See* AR at 37-54, 126-33, 144-51, 166-73, 178-84.

13  Even if her assertions of inability to pay and buy insurance are true, plaintiff does

14  not explain why she could not continue receiving treatment and checkups at the

15  San Bernardino County Department of Behavioral Health where she received

16  periodic mental care and, in her own words, "[s]he was not unfamiliar to them."

17  *See* Pl.'s Mem. at 8-9; AR at 239-77.

18  　　　In reaching his conclusions, the ALJ could not be expected to consider

19  reasons that plaintiff never provided.  Based on the evidence available to him in

20  the record, the ALJ made a reasonable decision in concluding that the long gaps

21  between treatments and follow-ups with physicians seriously undermined her

22  claims that her symptoms were disabling.  AR at 27, 29.  Plaintiff's failure to seek

23  regular treatment, which the ALJ identified in his opinion, is another clear and

24  convincing reason for discounting plaintiff's claims. *See Tommasetti*, 533 F.3d at

25  1039;  *Burch*, 400 F.3d at 680-81; *Orn*, 495 F.3d at 638; *Parra*, 481 F.3d at

26  750-51.

27

28

**B.   The ALJ Properly Rejected Lay Witness Testimony**

Plaintiff contends that the ALJ erred in rejecting the lay testimony of her sister-in-law, Pamela Stanton.  Pl.'s Mem. at 9-12.  The court disagrees with plaintiff's assertion that the ALJ failed to properly address this lay witness's testimony.

"[L]ay testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence and therefore *cannot* be disregarded without comment."  *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) (internal quotation marks, ellipses, and citation omitted); *see Smolen*, 80 F.3d at 1288; *see also* 20 C.F.R. § 404.1513(d)(4) (explaining that Commissioner will consider evidence from "non-medical sources," including "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy," in determining how a claimant's impairments affect his or her ability to work); 20 C.F.R. § 416.913(d)(4) (same).  The ALJ may only discount the testimony of lay witnesses by providing specific "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1983); *accord Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").  A lay witness is "not disqualified from rendering an opinion" on how a plaintiff's condition affects his or her ability to work simply because that witness is not a vocational or medical expert. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009).

Here, plaintiff's sister-in-law, Pamela Stanton, completed a "Function Report – Adult – Third Party" on February 1, 2009.  AR at 152-59.  Stanton stated that plaintiff has "back pain [that] affects her physical activities," "numbness and pain in feet" that make her move about "as little as possible," blood sugar levels

1    that go "up and down" due to diabetes, and "depression and bi-polar [disorder]."

2    *Id.* Stanton also indicated that plaintiff has trouble with lifting, squatting,

3    bending, standing, reaching, walking, sitting, kneeling, stair climbing, seeing,

4    memory, completing tasks, concentration, understanding, and following

5    instructions. *Id.* at 157. Regarding the ability to walk, Stanton noted plaintiff

6    "can go maybe a block before need[ing] to sit down." *Id.* Stanton also noted

7    plaintiff does not handle stress well at all, "becomes agitated [and] confused," and

8    "wants to shut down." *Id.* According to Stanton, whereas plaintiff used to be "a

9    very outgoing, social person," she now leads a secluded life in her house. *Id.* at

10   156-57. She cannot pay attention for long and "gets distracted." *Id.* She does not

11   follow spoken instructions well, requiring frequent reminders. *Id.*

12        The ALJ did not find Stanton's testimony credible, reasoning that her

13   statements were not supported by plaintiff's medical record. *Id.* at 27-29. The

14   ALJ opined that Stanton's statements regarding "serious problems with memory,

15   concentration, and persistence" and "problems with anger control" "were not

16   reflected in the concurrent treating mental health records." *Id.* at 27. The ALJ

17   opined further that Stanton's testimony about plaintiff's pain and numbness was

18   not supported by the medical record, as the record "reflects fair to good control of

19   [plaintiff's] medical problems despite irregular treatment," except during "a brief

20   period in 2008" when plaintiff started substance abuse treatment. *Id.* at 29.

21   Instead, the ALJ observed that Stanton's testimony "appeared to be balancing the

22   need to show [plaintiff] as disabled with the need to show that [plaintiff] was able

23   to care for her son . . . ." *Id.* at 29.

24        The court finds the reasons provided by the ALJ in discounting Stanton's

25   testimony were specific and germane to Stanton. *See Dodrill*, 12 F.3d at 919;

26   *Lewis*, 236 F.3d at 511. The ALJ found that Stanton's testimony regarding

27   plaintiff's physical and mental limitations conflicted with the objective medical

28   evidence, just as the ALJ had made the same determination regarding plaintiff's

1  testimony.  This was clearly a "germane reason" for discounting Stanton's

2  testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing

3  *Lewis*, 236 F.3d at 511) (inconsistency with medical evidence is a germane reason

4  for discrediting the testimony of lay witnesses).  Accordingly, the ALJ properly

5  rejected Pamela Stanton's lay witness testimony.

6                                                **V.**

7                                          **CONCLUSION**

8          IT IS THEREFORE ORDERED that Judgment shall be entered

9  AFFIRMING the decision of the Commissioner denying benefits, and dismissing

10  the complaint with prejudice.

11

12

13  DATED: May 16, 2013

14                                          _____

15                                          SHERI PYM
                                            United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28