UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA GAIL COLE, | Case No. ED CV 12-800-SP |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

**I.**

**INTRODUCTION**

On May 31, 2012, plaintiff Brenda Gail Cole filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of supplemental security income ("SSI"). On June 29, 2012, plaintiff filed an amended complaint. Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

1

1  Plaintiff presents two issues for decision: (1) whether the Administrative
2  Law Judge ("ALJ") properly discounted plaintiff's subjective complaints; and
3  (2) whether the ALJ properly discounted the testimony of a third-party witness
4  regarding plaintiff's limitations. Memorandum in Support of Plaintiff's Complaint
5  ("Pl.'s Mem.") at 4-12; Memorandum in Support of Defendant's Answer ("Def.'s
6  Mem.") at 2-6.

7  Having carefully studied, inter alia, the parties's moving papers, the
8  Administrative Record ("AR"), and the decision of the ALJ, the court concludes
9  that, as detailed herein, the ALJ properly discounted plaintiff's and the lay
10 witness's credibility. Consequently, this court affirms the decision of the
11 Commissioner denying benefits.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

14 Plaintiff, who was forty-nine years old on the date of her July 19, 2010
15 administrative hearing, has a ninth grade education. AR at 29, 127, 132. She has
16 no past relevant work experience. *Id.* at 29.

17 On December 22, 2008, plaintiff filed an application for SSI, alleging that
18 she has been disabled since March 1, 2003, due to diabetes and back problems. *Id.*
19 at 127. The Commissioner denied plaintiff's application initially and upon
20 reconsideration, after which plaintiff filed a request for a hearing. *Id.* at 24, 55-61,
21 71.

22 On July 19, 2010, plaintiff, represented by counsel, appeared and testified at
23 a hearing before the ALJ. *Id.* at 35-51. Corinne Porter, a vocational expert
24 ("VE"), also testified at the hearing. *Id.* at 51-54. On September 2, 2010, the ALJ
25 denied plaintiff's claim for benefits. *Id.* at 24-31.

26 Applying the well-known five-step sequential evaluation process, the ALJ

found, at step one, that plaintiff had not engaged in substantial gainful activity since December 22, 2008, the application date. *Id*. at 26.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: insulin-dependent diabetes mellitus with diabetic neuropathy, treated hypertension, and bipolar disorder. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 26-28.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined that she had the RFC to perform medium work, with the limitations that plaintiff can "stand or walk six hours in an eight-hour workday with customary breaks, sit without restriction except for customary breaks, [and] occasionally walk on uneven terrain, climb ladders, or work at heights . . . ." *Id.* at 28. The ALJ found "no restriction on bending, crouching, kneeling, crawling, and stooping," and further found plaintiff can perform "simple, non-detailed tasks in a non-public work setting." *Id.*

The ALJ found, at step four, that plaintiff has no past relevant work. *Id.* at 29.

At step five, the ALJ found, after considering plaintiff's age, education, work experience, and RFC, that there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including hand packager,

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 nn.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

cleaner, and laundry worker. *Id.* at 30. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act ("SSA"). *Id.*

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 6-11. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

**A.     The ALJ Gave Clear and Convincing Reasons for Discounting Plaintiff's Testimony**

Plaintiff complains that the ALJ failed to provide clear and convincing reasons to reject her testimony regarding her excess pain. Pl.'s Mem. at 4-9. The court disagrees.

The ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p.[2] To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment, "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Benton v. Barnhart*, 331

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

Here, at the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 27. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. The ALJ provided two reasons for discounting plaintiff's credibility: (1) plaintiff lacks objective medical evidence to substantiate her claims and the available objective medical evidence contradicts her claims; and (2) plaintiff's treatment history does not support her claims. *Id*. at 27-29.

### 1. The ALJ Gave a Clear and Convincing Reason When He Discounted Plaintiff's Credibility Based on Lack of Objective Evidence Supporting Plaintiff's Claims

The first ground provided by the ALJ for discounting plaintiff's credibility was the lack of objective medical evidence to substantiate plaintiff's claims. AR 27-27. An ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain," but it may be one factor used to evaluate credibility. *Bunnell*, 947 F.2d at 345; *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

Here, plaintiff claims the record contains objective evidence that supports her claims of debilitating back pain, leg and foot problems caused by diabetes, and depression and anxiety. Pl.'s Mem. at 4-9. She points to places in the record that indicate the loss of sensation to plaintiff's legs and feet (AR at 193, 298, 335-36),

6

diabetic muscular infarction with neuropathy and lower back pain (*id.* at 193), scoliosis in the lumbar region (*id.* at 339, 409), prescriptions for medications for back pain (*id.* at 197, 296), fatigue with low hematocrit rates (*id.* at 194-97, 212, 227, 300, 311, 322, 346, 376, 403, 420), slowed mentation and depression (*id.* at 196-97), suicidal ideation (*id.* at 217-18, 222), bipolar disorder with psychosis (*id.* at 244), and global assessment function ("GAF") scores of 45, 50, and 48 in July 2008, January 2009, and January 2011, respectively (*id.* at 244, 429). *See* Pl.'s Mem. at 6-9. Thus, plaintiff asserts the ALJ improperly evaluated the plaintiff's pain testimony and the record as a whole in discounting her credibility. *See id.*

In his opinion, the ALJ noted the impairments identified by plaintiff in her briefing and acknowledged that plaintiff has the severe impairments of insulin dependent diabetes with diabetic neuropathy, hypertension, and bipolar disorder, but determined, relying on the conclusions of examining physicians, that the record does not support the claimed "intensity, persistence and limiting effects" of the symptoms of these impairments. AR at 26-29. The ALJ found that despite plaintiff's ongoing diabetic condition, "there was no indication of problems with her diabetes other than persistent elevation of blood sugar levels" and a slightly elevated glycolated hemoglobin level. *Id.* at 26; *see id.* at 310-336, 344. Similarly, while the ALJ did find evidence of impairments in the lumbar region, the ALJ found "no physical examination findings" in plaintiff's most recent treating record from May 2010 to support her claims. *Id.* at 26; *see id.* at 339. And although the ALJ noted use of plaintiff's pain medication, the ALJ found no "weakness, imbalance, or disturbance of gait." *Id.* at 29. As for plaintiff's mental condition, the ALJ found that despite the GAF of 42 in January 2007, plaintiff's "formal mental status examination was essentially negative." *Id.* at 27; *see id.* at 255-58. The ALJ noted also that "[t]here is no treating source statement suggesting that [plaintiff] is unable to work because of her mental impairment or

was unable to work for any significant period of time . . . because of her mental impairment." *Id.* at 27.

In addition, the ALJ found affirmative medical evidence discounting plaintiff's claims in the findings of Kristof Siciarz, M.D., a consultative examining physician, who conducted an internal medicine examination on plaintiff and made a functional assessment in March 2009, and in the findings of D.R. Conte, M.D., a state agency psychiatric consultant, who conducted psychiatric reviews of plaintiff. *Id.* at 27, 29. Dr. Siciarz found that plaintiff's back did not have any abnormalities, palpations did not elicit pain complaints, and a straight-leg raising test returned negative results. *Id.* at 298. In addition, Dr. Siciarz observed "no evidence of deformity or swelling of any joint" and normal ranges of motion for plaintiff's arms and legs. *Id.* As for plaintiff's mental health condition, Dr. Conte concluded that plaintiff's "alleged severity [was] not fully supported" and that the diagnosis of bipolar disorder was "not fully credible in view of [plaintiff's] long term drug use." *Id.* at 288. The ALJ relied on these findings by Dr. Siciarcz and Dr. Conte, as well as lack of findings that support plaintiff's claims, in discrediting plaintiff's complaints of pain, anxiety, and depression. *Id.* at 27, 29.

The court finds the ALJ, after acknowledging the medical evidence for the existence of plaintiff's impairments, properly concluded that plaintiff's claims regarding "the intensity, persistence and limiting effects" of her impairments lack support from objective medical evidence. This was a clear and convincing reason for discounting plaintiff's credibility. *See* AR at 23, 24-28; *see also Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995) (a consultative examiner's opinions, if supported by clinical tests and observations upon examination, are substantial medical evidence and may be relied upon by the ALJ in order to determine the claimant's RFC).

**2. The ALJ Gave a Clear and Convincing Reason When He Discounted Plaintiff's Credibility Based on Failure to Seek Regular Treatment**

The ALJ's second ground for the adverse credibility finding – failure to seek regular treatment – was similarly clear and convincing. *See* AR at 27, 29; *Tommasetti*, 533 F.3d at 1039 (failure to follow a prescribed course of treatment weighs against a claimant's credibility); *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (the ALJ may properly rely on failure to seek treatment to discredit plaintiff's subjective complaints); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (noting that a failure to seek treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.").

In his opinion, the ALJ noted several gaps in plaintiff's treatment as an indication that her symptoms were not disabling. AR at 27, 29. Plaintiff testified at the July 19, 2010 administrative hearing that she had no feeling whatsoever in her feet, but admitted that she went nearly a year without treatment or medical examination. *Id.* at 46-47; *see id.* at 29. Similarly, as the ALJ noted, plaintiff alleged psychological problems of anger, aggravation, and frustration, but admitted that her most recent mental health treatment was in October 2009, nine months before the administrative hearing. *Id.* at 27, 42, 49. The ALJ further noted that plaintiff had no mental health treatment records since June 2009. *Id.* at 27; *see id.* at 360.

In her briefing, plaintiff attributes the inconsistency in seeking treatment and the attendant sparseness of treatment records to "her inability to afford care." Pl.'s Mem. at 7. She asserts not having insurance coverage led her to "only seek

care when her condition was 'critical' rather than ongoing chronic pain and neuropathy for which there was no treatment other than medication renewals." *Id.* She argues this inability to pay should not discount her complaints. *Id.* (quoting *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("[A] disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment.")).

While plaintiff is correct to assert that her indigency or uninsured status cannot be a reason to discredit her credibility, plaintiff does not point to any place in the record where indigency is documented or argued as the reason for her failure to seek treatment. *See* Pl.'s Mem. at 7-9. In fact, nowhere in the record does plaintiff indicate that the reason for the long gaps in treatment was inability to pay and lack of insurance. *See* AR at 37-54, 126-33, 144-51, 166-73, 178-84. Even if her assertions of inability to pay and buy insurance are true, plaintiff does not explain why she could not continue receiving treatment and checkups at the San Bernardino County Department of Behavioral Health where she received periodic mental care and, in her own words, "[s]he was not unfamiliar to them." *See* Pl.'s Mem. at 8-9; AR at 239-77.

In reaching his conclusions, the ALJ could not be expected to consider reasons that plaintiff never provided. Based on the evidence available to him in the record, the ALJ made a reasonable decision in concluding that the long gaps between treatments and follow-ups with physicians seriously undermined her claims that her symptoms were disabling. AR at 27, 29. Plaintiff's failure to seek regular treatment, which the ALJ identified in his opinion, is another clear and convincing reason for discounting plaintiff's claims. *See Tommasetti*, 533 F.3d at 1039; *Burch*, 400 F.3d at 680-81; *Orn*, 495 F.3d at 638; *Parra*, 481 F.3d at 750-51.

**B.     The ALJ Properly Rejected Lay Witness Testimony**

Plaintiff contends that the ALJ erred in rejecting the lay testimony of her sister-in-law, Pamela Stanton.  Pl.'s Mem. at 9-12.  The court disagrees with plaintiff's assertion that the ALJ failed to properly address this lay witness's testimony.

"[L]ay testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence and therefore *cannot* be disregarded without comment."  *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) (internal quotation marks, ellipses, and citation omitted); *see Smolen*, 80 F.3d at 1288; *see also* 20 C.F.R. § 404.1513(d)(4) (explaining that Commissioner will consider evidence from "non-medical sources," including "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy," in determining how a claimant's impairments affect his or her ability to work); 20 C.F.R. § 416.913(d)(4) (same).  The ALJ may only discount the testimony of lay witnesses by providing specific "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1983); *accord Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").  A lay witness is "not disqualified from rendering an opinion" on how a plaintiff's condition affects his or her ability to work simply because that witness is not a vocational or medical expert.  *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009).

Here, plaintiff's sister-in-law, Pamela Stanton, completed a "Function Report – Adult – Third Party" on February 1, 2009.  AR at 152-59.  Stanton stated that plaintiff has "back pain [that] affects her physical activities," "numbness and pain in feet" that make her move about "as little as possible," blood sugar levels

that go "up and down" due to diabetes, and "depression and bi-polar [disorder]." *Id.* Stanton also indicated that plaintiff has trouble with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, seeing, memory, completing tasks, concentration, understanding, and following instructions. *Id.* at 157. Regarding the ability to walk, Stanton noted plaintiff "can go maybe a block before need[ing] to sit down." *Id.* Stanton also noted plaintiff does not handle stress well at all, "becomes agitated [and] confused," and "wants to shut down." *Id.* According to Stanton, whereas plaintiff used to be "a very outgoing, social person," she now leads a secluded life in her house. *Id.* at 156-57. She cannot pay attention for long and "gets distracted." *Id.* She does not follow spoken instructions well, requiring frequent reminders. *Id.*

The ALJ did not find Stanton's testimony credible, reasoning that her statements were not supported by plaintiff's medical record. *Id.* at 27-29. The ALJ opined that Stanton's statements regarding "serious problems with memory, concentration, and persistence" and "problems with anger control" "were not reflected in the concurrent treating mental health records." *Id.* at 27. The ALJ opined further that Stanton's testimony about plaintiff's pain and numbness was not supported by the medical record, as the record "reflects fair to good control of [plaintiff's] medical problems despite irregular treatment," except during "a brief period in 2008" when plaintiff started substance abuse treatment. *Id.* at 29. Instead, the ALJ observed that Stanton's testimony "appeared to be balancing the need to show [plaintiff] as disabled with the need to show that [plaintiff] was able to care for her son . . . ." *Id.* at 29.

The court finds the reasons provided by the ALJ in discounting Stanton's testimony were specific and germane to Stanton. *See Dodrill*, 12 F.3d at 919; *Lewis*, 236 F.3d at 511. The ALJ found that Stanton's testimony regarding plaintiff's physical and mental limitations conflicted with the objective medical evidence, just as the ALJ had made the same determination regarding plaintiff's

12

testimony. This was clearly a "germane reason" for discounting Stanton's testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing *Lewis*, 236 F.3d at 511) (inconsistency with medical evidence is a germane reason for discrediting the testimony of lay witnesses). Accordingly, the ALJ properly rejected Pamela Stanton's lay witness testimony.

## V.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: May 16, 2013

SHERI PYM
United States Magistrate Judge